UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DIMITRI PATTERSON,

     Plaintiff,

vs.

Miami-Dade County, a political subdivision, the
Miami-Dade Police Department, the Miami-Dade
Corrections and Rehabilitation Department, Bertila
Soto, in her official capacity as Chief Judge of the
11th Judicial Circuit Court of Florida, Judge Stanford
Blake, Judge William Altfield, Mitchell Karpf, Cindy
D. Sackrin, Marcos Beaton, Jr., Mark Eiglarsh,
Jessica Underwood, Leon Hunter, Cecile Melanie
Casutt Von Batemberg, Gabriella Phillingane,
Katherine Fernandez Rundle, Phillip Reizenstein,
Jamie Morris, Christy L. Hertz, Nauman Siddque,
Drew Rosenhaus, Young, Berman, Karpf &
Gonzalez P.A., Black, Srebnick, Kornspan & Stumpf,
P.A., Wayne Adams, Judge Bernard Shapiro, Judge
Milton Hirsch, Judge Joseph I. Davis, Judge Donald
Cannava, Judge Deborah White-Labora, Judge
Alberto Milian, Mark E. Sawicki, Ericka Medina,
Joel Wilson, DNA Diagnostics Center, Inc., Bank of
New York Mellon, Bank of America Corp., NFL
Player Second Career Savings Plan Master Trust,
Savings Board of The NFL Player Second Career
Savings Plan, NFL Player Insurance Trust, the NFL
Management Council, Russell Walters, Lilia M.
Casal, Meyli Markward, Tammy Thompson, Vicki
Denslow, Marie White, Lindsay D. DiTusa, Phillip
Ronca, Paul Sumulong, John Doe 1, John Doe 2,
Jane Doe, Raymond James Financial, and Keith
Ginsburg,

              Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No:

# 18-20821-CV-ALTONAGA/GOODMAN

JURY TRIAL DEMANDED



FILED by ___LH___ D.C.

**Mar 5, 2018**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.—FT. PIERCE

<u>Violations</u>

**42 U.S.C. § 1985(3)**
**18 U.S.C. § 241**
**18 U.S.C. § 1341**
**18 U.S.C. § 1344**
**4th Amendment**
**5th Amendment**
**8th Amendment**
**13th Amendment**
**14th Amendment**

<u>JURISDICTION</u>

1.      This action is brought pursuant to § 42 U.S.C. § 1985(3), 18 U.S.C § 241, 18 U.S.C §

1341, 18 U.S.C § 1344, and the FOURTH, FIFTH, EIGHTH, THIRTEENTH, and

FOURTEENTH Amendments to the United States Constitution. Jurisdiction is founded upon 28

U.S.C § 1331 & § 1343.

<u>PARTIES</u>

2.      Plaintiff, Dimitri Patterson, was born in Miami, FL and is 34 years old.

3.      Defendant, Miami-Dade County, is a political subdivision who can be sued in its own

name and is responsible for the acts of its judicial branch and administrative departments.

4.      Defendant, the Miami-Dade Police Department (MDPD), is being sued in its official

capacity as an administrative department of Miami-Dade County.

5.      Defendant, the Miami-Dade Corrections and Rehabilitation Department (MDCR), is

being sued in its official capacity as an administrative department of Miami-Dade County.

6.      Defendant, Bertila Soto, is being sued as an individual and in her official capacity as

Chief Judge of the Miami-Dade 11th Judicial Circuit Court of Florida, which is a judicial branch

of Miami-Dade County.  Pursuant to *Florida Statute 43.26*, Chief Judge Soto is responsible for

the efficient and proper administration of the 11th Judicial Circuit and County Courts in Miami-

Dade County. In addition, Chief Judge Soto is responsible for developing a plan for the prompt

disposition of cases; assignment of judges, other court and executive assistants; control of

dockets; regulation and use of courtrooms; mandatory periodic review of the status of the

2

inmates of the county jail; and, consideration of statistical data. The Chief Judge also enters administrative orders to properly direct the court's day-to-day affairs and appoints committees to serve in an advisory capacity.

7.      Defendant, Judge Stanford Blake, is being sued as an individual and in his official capacity as a former Judge of the Eleventh Judicial Circuit Court of Florida, for conspiring to deprive the Plaintiff of his constitutional rights and for the multiple criminal acts against the Plaintiff.

8.      Defendant, Judge William Altfield, is being sued both as an individual and in his official capacity as an Eleventh Judicial County Court Judge of Florida, for conspiring to deprive the Plaintiff of his constitutional rights and for the multiple criminal acts carried out against the Plaintiff.

9.      Defendant, Cindy D. Sackrin, of the Law Offices of Cindy D. Sackrin, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights and for the numerous criminal acts of postage fraud.

10.     Defendant, Marcos Beaton, Jr., is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights and for the criminal acts of forgery and fraud.

11.     Defendant, Mitchell Karpf, of Young, Berman, Karpf & Gonzalez P.A., is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights and for the criminal acts of fraud and embezzlement.

12.     Defendant, Jamie Morris, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

13.     Defendant, Christy L. Hertz, of Christy Hertz Law P.A., is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights and for the criminal and fraudulent acts of embezzlement against the Plaintiff.

14.     Defendant, Nauman Siddique, an attorney for Kenny Leigh & Associates, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights and for his criminal and fraudulent acts against the Plaintiff.

15.     Defendant, Miami Assistant State Attorney, Leon Hunter, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

16.     Defendant, Miami Assistant State Attorney, Cecile Melanie Casutt Von Batemberg, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

17.     Defendant, Miami Assistant State Attorney, Jessica Underwood, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

18.     Defendant, Mark Eiglarsh, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

19.     Defendant, Phillip Reizenstein, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

20.     Defendant, Young, Berman, Karpf & Gonzalez P.A., is being sued for conspiring to deprive the Plaintiff of his constitutional rights.

21.     Defendant, Black, Srebnick, Kornspan & Stumpf, P.A., is being sued for conspiring to deprive the Plaintiff of his constitutional rights

4

22.     Defendant, Katherine Fernandez Rundle, State Attorney for the Miami State Attorney's Office, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

23.     Defendant, Miami Assistant State Attorney, Gabriella Phillingane, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

24.     Defendant, Drew Rosenhaus, the Plaintiff's former NFL agent, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights by communicating **telephonically** with Attorney Cindy Sackrin, with the intention to empower her to defraud, oppress, and coerce the Plaintiff to illegally benefit her client, Ericka Medina. Additionally, Mr. Rosenhaus is communicating **telephonically** with individuals employed by the NFL Players Insurance Plan, and the NFL Players Benefits.

25.     Defendant, Miami Assistant State Attorney, Wayne Adams, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

26.     Defendant, Bernard Shapiro, is being sued both as an individual, and in his official capacity as an Eleventh Judicial County Court Magistrate Judge of Florida, for conspiring to deprive the Plaintiff of his constitutional rights.

27.     Defendant, Judge Milton Hirsch, is being sued as an individual and in his official capacity as a Judge of the Eleventh Judicial Circuit Court of Florida, for conspiring to deprive the Plaintiff of his constitutional rights.

28.     Defendant, Judge Donald Cannava, is being sued as an individual and in his official capacity as a Judge of the Eleventh Judicial County Court of Florida, for conspiring to deprive the Plaintiff of his constitutional rights.

29.     Defendant, Judge Joseph I. Davis, is being sued as an individual and in his official capacity as a Judge of the Eleventh Judicial County Court of Florida, for conspiring to deprive the Plaintiff of his constitutional rights and the multiple criminal acts brought against the Plaintiff.

30.     Defendant, Judge Alberto Milian, is being sued as an individual and in his official capacity as a Judge of the Eleventh Judicial Circuit Court of Florida, for conspiring to deprive the Plaintiff of his constitutional rights.

31.     Defendant, Judge Deborah White-Labora, is being sued as an individual and in her official capacity as a Judge of the Eleventh Judicial Circuit Court of Florida, for conspiring to deprive the Plaintiff of his constitutional rights.

32.     Defendant, Mark E. Sawicki, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights and for his criminal acts of postage fraud.

33.     Defendant, Ericka Medina, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights, the criminal acts of paternity fraud, and communicating false reports to law enforcement, pursuant to *Florida Statute 837.05*.

34.     Defendant, Joel Wilson, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

35.      Defendant, DNA Diagnostics Center, Inc., is being sued as a "person" for conspiring to deprive the Plaintiff of his constitutional rights and the criminal acts of fraud.

36.      Defendant, Raymond James Financial being sued for violation 42 U.S.C 1985(3).

37.      Defendant, Bank of New York Mellon, is being sued as a "person" for conspiring to deprive the Plaintiff of his constitutional rights and the criminal acts of fraud.

38.      Defendant, NFL Player Second Career Savings Plan Master Trust, EIN # **-***0796, is being sued as a "person" for conspiring to deprive the Plaintiff of his constitutional rights and defrauding the Plaintiff.

39.      Defendant, Savings Board of the NFL Player Second Career Savings Plan, EIN # **-***2902, is being sued as a "person" for conspiring to deprive the Plaintiff of his constitutional rights and defrauding the Plaintiff.

40.      Defendant, NFL Player Insurance Trust, EIN # **-***7470, is being sued as a "person" for conspiring to deprive the Plaintiff of his constitutional rights and defrauding the Plaintiff.

41.      Defendant, the NFL Management Council, EIN # **-***8305, is being sued as a "person" for conspiring to deprive the Plaintiff of his constitutional rights and defrauding the Plaintiff.

42.     Defendant, Bank of America Corp., is being sued as a "person" for conspiring to deprive the Plaintiff of his constitutional rights and defrauding the Plaintiff.

43.     Defendant, Phillip Ronca, is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341.

44.     Defendant, Paul Sumulong, is being sued for violation of 42 U.S.C. § 1985(3).

45.     Defendant, John Doe 1, an employee of Bank of America, is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241, 18 U.S.C § 1344 and 18 U.S.C § 1341.

46.     Defendant, Jane Doe, an employee of DNA Diagnostics Center Inc., is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241, and 18 U.S.C § 1341.

47.     Defendant, John Doe 2, an employee of Bank of New York Mellon Inc., is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241, 18 U.S.C § 1341 and 18 U.S.C § 1344.

48.     Defendant, Lilia M. Casal, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights.

49.     Defendant, Russell Walters, is being sued as an individual for conspiring to deprive the Plaintiff of his constitutional rights and fraud.

50.    Defendant, Meyli Markward, is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341.

51.    Defendant, Tammy Thompson, is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341.

52.    Defendant, Lindsay Ditusa, is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341.

53.    Defendant, Marie White, is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341.

54.    Defendant, Vicki Denslow, is being sued for violations of 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341.

55.    Defendant, Keith Ginsburg is being sued for violations of 42 U.S.C. § 1985(3).

56.    Defendant, Raymond James Financial is being sued for violations of 42 U.S.C. § 1985(3).

## Statement of Facts

## First Cause of Action

**Defendant, Miami-Dade County's Failure to Intervene and Come to the Aid of the Plaintiff to Protect His Constitutional Rights. Violation of 42. U.S.C. § 1985(3)**

57.     Miami-Dade County is a municipality that is responsible for the acts of its judicial branch and administrative departments, and has the authority to exercise its power, unless prohibited by the Constitution, pursuant to Florida Statute 166.021. The deprivation of the Plaintiff's rights by Miami-Dade County administrative departments and judicial branch fiduciary officers, has been a two and a half year strategically planned malicious ambush. Miami-Dade County has the power to prevent and aid in the protection of the Plaintiff's constitutional rights, but chose to turn a blind eye. The Defendant is considered a "person" liable for monetary damages pursuant to 28 U.S.C. § 1343 and 42. U.S.C. § 1985(3)

58.     The Plaintiff has suffered injuries by being traumatized, physically attacked, embarrassed, defrauded, and publically humiliated as a direct result of Miami-Dade County, and is entitled to recover damages pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1985(3). The Defendant failed to prevent the wrongs mentioned in this complaint while having full knowledge of the strategically planned abhorrent acts committed and the power to prevent, but chose **not** to stop the deprivation of the Plaintiff's constitutional rights that are secured to him by the Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments.

## Second Cause of Action

**Violation of 42 U.S.C. § 1985(3), 18 U.S.C § 241, 18 U.S.C § 1341, 1344 and the FOURTH, FIFTH, EIGHTH, THIRTEENTH, and FOURTEENTH Amendments by Defendants 6-36, 42-46, 48-49 & 55-56.**

59.     On or about December 25, 2014, Defendant Drew Rosenhaus, the Plaintiff's former NFL agent, proceeds to conspire to deprive the Plaintiff of his constitutional rights by communicating **telephonically** with Attorney Cindy Sackrin, with the intention to empower her to defraud, oppress, and coerce the Plaintiff to illegally benefit her client, Ericka Medina. Additionally, Mr. Rosenhaus is currently conspiring **telephonically** with individuals employed by the NFL Players Insurance Plan, and the NFL Players Benefits Plan to deprive the Plaintiff of his constitutional rights under his retirement plans.

60.     On April 9, 2015, Ericka Medina signs under penalty and perjury declaring the Plaintiff as being the biological father with full knowledge of him not be in the biological father. (See Exhibit C)

61.     On April 14, 2015, Attorney Sackrin emailed an affidavit to the Plaintiff for attorney fees and services not yet rendered in the amount of $45,100.00. This is a clear act of premeditated fraud and attorney misconduct. This email can be verified by electronic transmission authentication.

62.     Between June 2015 and January 2017, Attorney Sackrin appeared at countless fraudulent hearings with full knowledge of this case having **no merit** with the intent to deprive the Plaintiff of his constitutional rights. (See Exhibit C)

63.     Between April 2015 and March 2017, Attorney Sackrin committed mail fraud by sending numerous documents via postage mail (fraudulent orders, judgments, and a Bodily Attachment Writ of Arrest) to the Plaintiff's mother's residence. Attorney Sackrin's sole purpose was to stalk, defraud, and deprive the Plaintiff of his constitutional rights. Attorney Sackrin was reported to the US Postal Inspection Service. (See Exhibit C)

64.    Attorney Sackrin maintained constant communication with the Plaintiff's previous attorneys, Mitchell Karpf, Marcos Beaton, Jr., Christy Hertz, and Nauman Siddique, both telephonically and via email with the intent to deprive the Plaintiff of his constitutional rights. This can easily be proven with phone authentication by a certified professional in the industry.

65.    On June 1, 2015, at the Lawson E. Thomas Courthouse, Judge Stanford Blake, under the administrative authority of Chief Judge Bertila Soto, initiated a pre-meditated Paternity Fraud scheme by presiding over Miami-Dade County Case 14-028951 FC 18, and conspiring with the Plaintiff's two attorneys, Defendants, Mitchell Karpf and Jamie Morris of Young, Berman, Karpf & Gonzalez, and opposing counsel, Cindy D. Sackrin and her client, Ericka Medina and DNA Diagnostics, Inc. Judge Blake and the above-mentioned attorneys deceived the Plaintiff into believing that Judge Blake was issuing an order for a legal DNA test to be executed by the Defendant, DNA Diagnostics Inc. A legal DNA test was never issued pursuant to Florida law.

66.    On or around June 13, 2015, the Plaintiff goes to a DNA Diagnostics testing facility located at the corner of SR 826 and Biscayne Blvd in Aventura, FL. The Plaintiff proceeds to be swabbed by an employee at the facility without being fingerprinted or photographed.

67.    On or around June 19, 2015, the Plaintiff receives an email from DNA Diagnostics, Inc. with a secure link that required a password to access the DNA results that did not have a **chain of custody** attached. This act is a clear violation of 42 U.S.C 1985(3). DNA Diagnostics, Inc. is fully aware that a legal DNA test pursuant to Florida law was never executed, but proceeded to conspire to deprive the Plaintiff of his right to due process of law. DNA Diagnostics' prejudiced actions clearly show the intent to take advantage of the Plaintiff's current status as a misrepresented client showing premediated intent to harm. These actions establish their liability for violation of 42 U.S.C 1985(3) and as a result, the Plaintiff is entitled to damages pursuant to 28 U.S.C 1343. (See Exhibit C)

68.     On or around June 19, 2015, the Plaintiff receives a phone call from his family law attorneys, Mitchell Karpf and Jamie Morris congratulating him on the news. At this time both attorneys had full knowledge that a legal DNA test, pursuant to Florida law, was never executed, but proceeded to conspire to deprive the Plaintiff of his right to due process of law.

69.     On June 24 2015, Attorney Sackrin files a Notice of filing a DNA Test Report into the Miami-Dade Clerk of Court. Attorney Sackrin is in her right mind and is fully aware that a **legal** DNA test has not been executed pursuant to Florida law, but proceeds to willfully violate 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341. (see exhibit C)

70.     On June 24, 2015, at the Lawson E. Thomas Courthouse, Judge Blake, with Defendants, Mitchell Karpf and Jamie Morris of Young, Berman, Karpf & Gonzalez, and opposing counsel, Cindy D. Sackrin and her client, Ericka Medina, committed Paternity Fraud, by coercing the Plaintiff into disclosing his financial statements without a legal DNA test. The DNA test was not properly executed according *to Florida Statute 742.12*. **There was no verified documentation of the chain of custody of the blood or other specimen, which makes the DNA test INVALID.** Judge Blake has full knowledge of this law. Judge Blake is fully aware that a legal DNA test pursuant to Florida law was never executed but proceeded to conspire to deprive the Plaintiff of his right to due process of law. (See Exhibit C)

71.     On June 24, 2015, at the Lawson E. Thomas Courthouse, Judge Blake conducts a "meeting of the minds" conspiring with Defendants, Mitchell Karpf and Jamie Morris of Young, Berman, Karpf & Gonzalez, and opposing counsel, Cindy Sackrin and her client, Ericka Medina, and proceeded to coerce the Plaintiff into paying the opposing attorney, Cindy Sackrin, attorney fees in the amount of $37,000.00, without an executed DNA test or an establishment of paternity pursuant to Florida Law. During the illegal hearing, Attorney Sackrin brags endlessly about her friendship with Drew Rosenhaus and how they "speak **telephonically** all the time in regards to

the Plaintiff". Attorney Sackrin continued her criminal behavior of *role playing* with the above-mentioned co-defendants, by spending two hours illegally cross examining the Plaintiff about personal finances and his past career. Attorney Sackrin also illegally obtains the Plaintiff's credit card and bank records from the Plaintiff's attorney. (See Exhibit C)

72.     On June 24, 2015, at the Lawson E. Thomas Courthouse, Judge Blake, with Defendants, Mitchell Karpf and Jamie Morris of Young, Berman, Karpf & Gonzalez, and opposing counsel, Cindy Sackrin and her client, Ericka Medina, proceeded to coerce the Plaintiff into paying $5,000.00 a month in temporary child support. Again, there was no DNA test or an establishment of paternity pursuant to Florida Law. (See Exhibit C).

73.     On June 24, 2015, at the Lawson E. Thomas Courthouse, Judge Blake continues to *role play* with Defendants, Mitchell Karpf and Jamie Morris of Young, Berman, Karpf & Gonzalez, and opposing counsel, Cindy Sackrin and her client, Ericka Medina, by stating that the Plaintiff would meet the mother of the child in question at the Aventura Mall, Aventura FL 33180, on August 1, 2015, to have unsupervised timesharing, although at that time, establishment of paternity, pursuant to Florida law, was **nonexistent**.

74.     On or before July 2015, the Plaintiff questioned the test and placed a call to DNA Diagnostics and was told that **there was no record and no chain of custody** for the mother, Ericka Medina and her son ever taking a **legal** DNA test pursuant to Florida law on the date of June 11, 2015.

75.     On or around July 22, 2015, the Plaintiff contacts DNA Diagnostics telephonically asking where the Defendant, Ericka Medina and her child took the DNA test and was told by an employee that the Defendant, Ericka Medina, went to a location in Hialeah, FL. After stating the location, the employee pauses and then asks the Plaintiff if he would mind being placed on a

brief hold. Jane Doe comes on the line refusing to identify herself stating, "We can't give you the location of where Ericka Medina took the test", and ended the call.

76.     On August 1, 2015, the Aventura Police arrested the Plaintiff at his home based on a fabricated police statement by Ericka Medina, and Case F-15-15779 was generated with the charges of felony child abuse and battery. The Plaintiff then secured the services of bail bondsman, Phillip Ronca, who proceeds to conspire by refusing to retrieve the Certificate of Discharge of bond for Case F-15-15779, at the Plaintiff's request, which he received on February 3, 2018. Instead, Mr. Ronca, proceeded to send **fraudulent** documentation showing warrant info on the criminal docket to the Plaintiff's mother's email address. (See Exhibits B and E)

77.     On December 2, 2015, at the Lawson E. Thomas Courthouse, Judge Blake defrauds the Plaintiff by issuing an illegal money judgement and Writ of Garnishment to Mitchell Karpf of Young, Berman, Karpf & Gonzalez, without executing any of the civil law procedures pursuant to Chapters 48, 55, and 77 of the Florida Statutes. **The Florida Department of State has no record of a judgment lien in the name of Dimitri Patterson**. Mitchell Karpf proceeds to present the fraudulent Judgment to the Defendant Bank of America. Bank of America acknowledges the fraudulent documentation and disburses the amounts of $35,329.00 and $125.00 to Mitchell Karpf from the Plaintiff's BOA account ending in ****0186. Bank of America has full knowledge of the money judgement being fraudulent, but proceeds to willfully conspire with Defendants Mitchell Karpf, of Young, Berman, Karpf & Gonzalez P.A., and Judge Stanford Blake. (See Exhibit D)

78.     On or about December 15, 2015, after being made aware of the illegal transaction, the Plaintiff placed a phone call to the Bank of America customer service number at 1-800-432-1000, and spoke with John Doe 1 who didn't reveal his name. John Doe 1 told the Plaintiff that the "transaction was from a court order for a money judgment and that there was nothing that Bank of America could do". The Plaintiff asked John Doe 1 to explain the details surrounding

the money judgment and he stated "it looks like a judgment from a Mitchell Karpf". Bank of America has yet to return the stolen funds to the Plaintiff. Bank of America willfully conspired with Mitchell Karpf of Young, Berman, Karpf & Gonzalez P.A., and is in direct violation of 42 U.S.C. § 1985(3), 18 U.S.C § 241 and 18 U.S.C § 1341. 18 U.S.C § 1344. The Plaintiff is entitled to damages pursuant to 42 U.S.C. 1983(3) and 28 U.S.C. 1343.

79.     From June 2015 to present, employees such as Paul Sumulong from Bank of America have intentionally sent discriminative emails attempting to deny the Plaintiff of his right to cash a cashier's check and failing to adhere to the due process of correcting illegal funds transfers. that are clearly evident. The Plaintiff's bank account details and online log in username/passcode information and spending activity also was disclosed telephonically to attorneys, Cindy D. Sackrin and Mitchell Karpf. The Defendant, Bank of America has clearly ignored due process and has failed to supervise and take reasonable steps concerning the activities set forth by their employees conspiring to deprive the Plaintiff of his property and liberty. (See Exhibit G) As a direct result of Bank of America's actions, the Plaintiff is entitled to damages pursuant to 42 U.S.C 1985(3) and 28 U.S.C 1343.

80.     During three illegal hearings at the Lawson E. Thomas Courthouse on December 2, 2015, December 29, 2015, and January 12, 2016, Judge Blake, with Defendants, Mitchell Karpf and Jamie Morris of Young, Berman, Karpf & Gonzalez, and opposing counsel, Cindy Sackrin and her client, Ericka Medina, calls the Plaintiff's financial institution, Raymond James, located at 2525 Ponce De Leon Blvd., Suite 600, Coral Gables, FL, and asks the bank representative to disclose personal bank account information without legal authorization. Raymond James Financial willfully disclosed the Plaintiff's financial information with Keith Ginsburg being the direct point of contact as a co-conspirator.  This can easily be proven by phone authentication by a certified professional in the industry.

81.     On February 8, 2016, at the Lawson E. Thomas Courthouse, Judge Blake, with
Defendants, Mitchell Karpf and Jamie Morris of Young, Berman, Karpf & Gonzalez
(telephonically), and opposing counsel, Cindy Sackrin and her client, Ericka Medina, coerced the
Plaintiff into paying $42,000.00 to Attorney Sackrin by bullying him with Miami-Dade Police
Officers. Judge Blake then proceeds to force him into paying $5,000.00 in illegal child support to
Ericka Medina. (See Exhibit C)

82.     When the Plaintiff asked to see the Administrative Order, Judge Blake illegally holds him
in contempt, then issues a fraudulent Writ of Bodily Attachment and has him arrested by two
Miami-Dade Police Officers and transported to MDCR facility *Turner Guilford Knight*
*Correctional Facility (TGK)*.  Sometime thereafter, Judge Stanford Blake **stamps** an illegal order
directing Court Registry to release the amount of $5,000.00 to Attorney Cindy Sackrin. (see
Exhibit C)

83.     Between June 2015 and March 2016 Judge Stanford Blake conspires to willfully stamp
fraudulent orders with ill intent to defraud and destroy the Plaintiff. Judge Blake is well learned
in Florida law concerning Florida family court cases and is well aware of the illegal activity that
he is participating in. The Defendant clearly believes he is above the law judging by his actions,
and must be prosecuted according to his willful participation being the **glue** that held the
fraudulent scheme together before the Plaintiff came into the knowledge of Florida law
concerning paternity establishment. ( Exhibit C)

84.     On October 2, 2015, the Miami State Attorney's Office takes no action and does not file
charges against the Plaintiff within the statute of limitations for Case F-15-15779.

85.     On October 23, 2015, at the Richard E. Gerstein Justice Building,
11th Judicial Circuit Judge Alberto Milian, under the administrative authority of **Chief Judge**
**Bertila Soto**, disregards the expiration of the statute of limitations (Florida Jurisprudence 2d

1151) for Case F-15-15779, and proceeds to create a new fraudulent case and *Conspires* with the Plaintiff's legal counsel, Marcos Beaton, Jr., of Black, Srebnick, Kornspan & Stumpf, P.A. It's to be noted that the Clerk of Court never issued a final disposition to the Plaintiff after several requests in person from the Lawson E. Thomas Courthouse and the Richard E. Gerstein Building. Instead the Clerk of Court issued documentation showing an invalid Filing of Information with charges from an expired case being reduced to battery and culpable negligence without an executed Charging Document pursuant to  Florida Statute 27.181 (1)(2) and Florida Jur. 2d 1163 & 1165, with the willful intent to conspire to deprive the Plaintiff of his constitutional rights. (See Exhibit F)

86.     Between September 8, 2015 and October 25, 2015, Christy Hertz, of Christy Hertz Law, P.A., files multiple fraudulent family court pleadings with full knowledge of the absence of a legal DNA test. The Defendant is in her right mind and is a willing participant in conspiring to deprive the plaintiff of his rights. (See Exhibit C)

87.     On or about October 22, 2015, after a "meeting of the minds" with Co-Defendant, Cindy Sackrin, the Plaintiff's legal counsel, Christy Hertz, proceeds to accept a wire transfer in the amount of $37,500.00 on behalf of Attorney Sackrin to embezzle and defraud the Plaintiff, while also participating in a paternity fraud scheme against the Plaintiff. (See Exhibit C)

88.     On or about November 18, 2015, Marcos Beaton, Jr., proceeds to **forge** the Plaintiff's signature on an affidavit waiving his right to appear at all Pre-Trial court proceedings for **INVALID** case B-15-34548. (see exhibit F)

89.     On or about November 24, 2015, the Plaintiff's family law attorney, Nauman Siddique, proceeds to defraud the Plaintiff out of $5,000.00 by deceiving him into believing that a Recusal procedure will be executed against Judge Stanford Blake. Mr. Siddique also conspired with opposing counsel, Cindy D. Sackrin telephonically, with the willful intent to deprive the Plaintiff

of his constitutional rights, while willfully participating in a paternity fraud scheme. (See Exhibit C)

90.     On December 2, 2015, at the Lawson E. Thomas Courthouse, 11th Judicial Circuit Court Judge, Deborah White-Labora, under the administrative authority of **Chief Judge Bertila Soto**, disregards the discharge of Case F-15-15779. Judge Labora proceeds to conspire with the Plaintiff's legal counsel, Marcos Beaton, Jr., to deceive the Plaintiff into believing that he was entering into a Misdemeanor Pre-Trial Diversion program with full knowledge of the legal disposition of Case F-15-15779. (See Exhibit F)

91.     On May 5, 2016, at the Lawson E. Thomas Courthouse, 11th Judicial County Judge, Joseph Davis, under the administrative authority of **Chief Judge Bertila Soto**, conspires with the Plaintiff's legal counsel, Marcos Beaton, Jr., by disregarding the discharge of Case F-15-15779. Judge Davis proceeded to verbally communicate a bench warrant against the Plaintiff, and set an illegal bond amount of $100,000.00, which violated Florida law and the Plaintiff's constitutional rights. This fraudulent information was put onto the Miami-Dade County Clerk Docket website under Case Info for the public to see. (See Exhibits B & F)

92.     On or about October 16, 2016, the Plaintiff's former family law attorney, Joel Wilson, proceeded to conspire with Attorney Sackrin to fraudulently open up a **closed** child support case in Orlando-Orange County, FL on behalf of the Plaintiff without the Plaintiff's knowledge, and showing the Plaintiff to have an arrearage of $40,000.00 in child support. This was a deceptive and intentional act to defraud the Plaintiff.  This can easily be proven with phone or email authentication by a certified professional in the industry.

93.     On July 18, 2017, at the Lawson E. Thomas Courthouse, 11th Judicial County Court Judge, Donald Cannava, under the administrative authority of **Chief Judge Bertila Soto**, disregards the legal disposition of Case F-15-15779. Furthermore, Judge Cannava denies the

Plaintiff's "Motion to Dismiss" with full knowledge of Case B-15-34548 being **invalid** without an executed Charging Document being filed pursuant to Florida law.

94.     On June 1, 2017, at the Lawson E. Thomas Courthouse, 11th Judicial County Court Judge, William Altfield, under the administrative authority of **Chief Judge Bertila Soto**, intentionally disregards the law to harass the Plaintiff by repeatedly scheduling him to appear in court for unjustified reasons between June 1, 2017 and October 16, 2017, with the terms "Status Report" and "Trial Hearing" as the reason. Judge Altfield was fully aware of Case B-15-34548 being **invalid**, as well as the law concerning discharged cases. (See Exhibit B)

95.     On July 23, 2017, ASA Leon Hunter, states the following in an email to the Plaintiff, "Good afternoon Mr. Patterson, please find the attached discovery pack for **trial** on Monday, 7/24/2017." The Defendant is a Florida Bar attorney and can identify a legal charging document pursuant to Florida law.  The Defendant is in clear violation of 42 U.S.C 1985(3) and must be prosecuted accordingly. (See Exhibit B)

96.     On July 24, 2017, at the Lawson E. Thomas Courthouse, Judge Altfield, under the administrative authority of **Chief Judge Bertila Soto**, proceeded to go forth with a **jury selection, a full jury trial**, and *role played* with Miami Assistant State Attorneys (ASA) Leon Hunter, Cecile Casutt Von Batemberg, and Gabriella Phillingane, with each one having full knowledge that Case B-15-34548 was an **invalid** case. On July 24, 2017, after the Plaintiff, as a Pro Se Litigant, was acquitted by a jury of his peers for **invalid** Case B-15-34548, Judge Altfield not only illegally held him on the basis of an alleged Indirect Contempt charge, but also summoned two female Miami-Dade Police Officers to coerce the Plaintiff from leaving the courtroom. (See Exhibit B)

97.     On July 26, 2017, at the Lawson E. Thomas Courthouse, Judge Altfield forced the
Plaintiff to sign a "Notice of Trial" form to appear back in court at 10:00 a.m., at which time the
Plaintiff was given a copy of a petition, "Rule to Show Cause". (See Exhibit H)

98.     On August 15, 2017, during an illegal hearing at the Lawson E. Thomas Courthouse,
Judge Altfield held the Plaintiff against his will by threatening, intimidating, and bullying him
with six Miami-Dade Police officers standing in front of the exit doors. Judge Altfield then
proceeded to order the Plaintiff to be taken into custody after the Plaintiff repeatedly asked Judge
Altfield why, and for what purpose was he there for, and during that illegal process, six Miami-
Dade Police Officers brutally attacked the Plaintiff in front of ASA Jessica Underwood, ASA
Leon Hunter, and ten other ASA attorneys from the Miami-Dade State Attorney's Office. (See
Exhibit F)

99.     On August 18, 2017, during an illegal hearing for a Motion for Release Pending Appeal
at the Lawson E. Thomas Courthouse, Judge Altfield conspires with the Plaintiff's legal counsel,
Phillip Reizenstein and ASA Jessica Underwood. Attorney Reizenstein proceeds to conspire with
Judge Altfield and Ms. Underwood by reading his motion with full knowledge of the Plaintiff
being **illegally** detained at the Turner Guilford Knight Correctional Facility (TGK), knowing that
Case B-15-34548 was an **invalid** case. After Attorney Reizenstein reads his motion, he walks
over to the Plaintiff and the Plaintiff asks him if he's being released and Attorney Reizenstein
says, "No you're going back to jail. They're going to take you back to the holding cell now, and
I'll come back to speak with you in 5 minutes". (See Exhibit H)

100.    On or about August 20, 2017, Attorney Reizenstein visits the Plaintiff at TGK while
having full knowledge that he's being illegally detained and tries to convince him to write a letter
admitting guilt to Judge Altfield, and accepting community service for a fraudulent case. When
the Plaintiff refused, Attorney Reizenstein then proceeds to attempt to provoke the plaintiff into
firing him.

101.    On or around August 19, 2017, Attorney Reizenstein sends emails to the Plaintiff's representatives, and copies Co-Defendant, Attorney Marcos Beaton, Jr. in the emails.

## Third Cause of Action

**Violation of the 5th Amendment, 42 U.S.C § 1985(3), 18 U.S.C.  § 241 and 1341 by Defendants Judge William Altfield, Lilia M. Casal, Mark Eiglarsh, Russell Walters, and Jessica Underwood.**

102.    On August 22, 2017, during an illegal hearing at the Lawson E. Thomas Courthouse, Judge Altfield *role plays* with the Plaintiff's legal counsel, Mark Eiglarsh and ASA Jessica Underwood to willfully initiate **bail bond fraud** for **invalid** Case B-15-34548 in the amounts of $50,000.00 and $100,000.00, on behalf of the **invalid** Indirect/Direct Contempt charges. After the illegal hearing, Mark Eiglarsh refers Russell Walters, of the Bail Bond Firm, to the Plaintiff's mother and the Indemnitor as a reputable agent, and asks Russell Walters to" execute the bail bond procedure as quickly as possible, if he decides to take it." (See Exhibit I)

103.    On August 22, 2017, Jessica Underwood, during an illegal hearing at the Lawson E. Thomas Courthouse, states to Judge Altfield saying, "Your Honor, the State recommends a bail of $100,000.00 for Indirect Contempt and $50,000.00 for Direct Contempt, and that the defendant should wear an ankle monitor and be put on house arrest until the trial". The Plaintiff's attorney, Mark Eiglarsh, conspires with Judge Altfield and Jessica Underwood with full knowledge of case B-15-34548 being **invalid** and the Plaintiff being illegally detained by the TGK Correctional facility.

104.    On August 22, 2017, Lilia M. Casal of Lilly's Bail Bond, Inc., and Russell Walters of the Bail Bond Firm, commit the criminal acts of fraud by willfully disregarding Florida Statute

903.045. A criminal surety bail bond **must** be connected to a pretrial or appellate release of a criminal defendant. Case B-15-34548 is an **invalid** case with a fraudulent final disposition pursuant to Florida Law.

105.    Mr. Walters and Ms. Casal have full knowledge of the Florida law that governs bail bond agents and criminal surety bonds, but chose to willfully violate the law and the constitutional rights of the Plaintiff. International Fidelity Insurance Company (AIA), Mr. Walters, and Ms. Casal, proceeded to sign and issue Surety bond appearance forms, power of attorney forms, and a contingent promissory note for **invalid** Case B-15-34548 in the amounts of $100,000.00 and $50,000.00, with full knowledge of pretrial release conditions being **nonexistent**, thereby, defrauding the Plaintiff and the Indemnitor who put up collateral on behalf of the Plaintiff. (See Exhibit F)

106.    On August 22, 2017, Russell Walters transfers the fraudulent bonds to bail bond agent, Lilia M. Casal, but stamps his company's name, The Bail Bond Firm and address on the "Agency Signature" line with the intent to deceive, defraud, and to deter the Plaintiff and the Indemnitor from exercising their right under *Florida Statute 648.571* to return the collateral.  The Plaintiff have exercised *Florida Statute 648.571* and Ms. Casal has yet to respond.

107.    On August 22, 2017, Russell Walters receives $16,500.00 from the Plaintiff's mother, and fraudulently receives the amount of $15,000.00 based on illegal bonds.

108.    On September 26, 2017, after the Indemnitor questioned the validity of the bonds, Russell Walters violates Florida Statute 416.13 & 15.15 by sending the Indemnitor a modified contingent promissory note where her signature was **forged** by Russell Walters of the Bail Bond Firm.

109.    On or about September 28, 2017, Judge Altfield sends **two** "Notices of Court Appearance" for a "Status Report" hearing dated October 2, 2017 and October 16, 2017, with the intent to illegally and physically harm the Plaintiff.

110.    On September 5, 2017, at the Richard E. Gerstein Justice Building, 11th Judicial Circuit Judge, Milton Hirsch, under the administrative authority of **Chief Judge Bertila Soto**, deprived the Plaintiff of his constitutional right to represent himself in Case F-17-16392 as a Pro Se Litigant. Judge Hirsch then proceeded to hold the Plaintiff in the courtroom against his will until the Plaintiff agreed to retain counsel, then Judge Hirsch allowed the Plaintiff to leave.

111.    On September 27, 2017, at another "Status Hearing", Judge Hirsch, along with Assistant State Attorney Wayne Adams, attempted to deceive the Plaintiff by filing an **invalid** Charging Document pursuant to   Florida Statute 27.181 (1)(2) and (Florida Jur. 2d 1163 & 1165),  with the willful intent to deprive the Plaintiff of his constitutional rights. When the Plaintiff desired to move forward as a Pro Se Litigant, Judge Hirsch stated, "I am concerned about your mental capacity", and proceeded to discriminate by attempting to coerce the Plaintiff into taking a psychological evaluation with Dr. Gianna Salas, and Dr. Sanford Jacobson, whom both placed phone calls to the Plaintiff without following the legal procedure pursuant to *Florida Rule of Criminal Procedure 3.210.* (see exhibit J)

112.    On October 16, 2017, Mark Eiglarsh emails the Plaintiff stating, "As I predicated and conveyed to you in prior communications, the court issued a warrant for your **failure to appear** this morning. I objected to it, however, he (Judge William Altfield) deemed your actions willful." Mr. Eiglarsh is fully aware that case B-15-34548 is **invalid** and a warrant for the Plaintiff's arrest will **never** be executed pursuant to Florida Law. Mr. Eiglarsh is in his right mind and knew that he was willfully conspiring to deprive the Plaintiff of his constitutional rights. (See Exhibit I).  The Defendant, Mark Eiglarsh, willfully played a significant role in conspiring with Co-Defendants, Judge William Altfield, State Attorney Katherine Fernandez

Rundle, ASA Jessica Underwood and ASA Cecile Melanie Von Batemberg, to deprive the Plaintiff of his rights through email correspondence, fraudulent criminal court pleadings, and illegal hearings with **full knowledge** of the Plaintiff being **illegally** detained by Turner Guilford Knight Correctional Facility and their being **no legal charging document** in existence pursuant to *Florida Statute 27.181 (1)(2)* and *Florida Jur. 2d 1163 & 1165* (**See Exhibit I**). These willful actions clearly establish the Defendant's liability for the violation of 42 U.S.C § 1985(3) & 18 U.S.C § 241, and as a direct and proximate result of the Defendant's actions, the Plaintiff is entitled to relief from the Defendant and prosecution as alternative relief from the Court.

113.    Under the administrative Authority of Bertila Soto, the Miami-Dade County Clerk of Court online docket is repeatedly manipulated to attack the Plaintiff's reputation and violate his constitutional rights, by reflecting **false** docket entries of sexual battery and case transfers for Case F-15-15779, in addition to giving the **false** impression that the Plaintiff accepted a Plea deal for Case F-17-16392. As a direct and proximate result of the Defendant's actions the Plaintiff is entitled to injunctive relief.  (see exhibit B)

114.    The Plaintiff, Dimitri Patterson, is clearly being targeted by multiple entities conspiring to **destroy** his life as a human being, and publicly humiliate him by defaming his name on the global internet platform based on a foundation of lies in police reports and fraudulent court records. These abhorrent acts that were **strategically** planned by the Defendants, ignited a chain reaction of the deprivation of his rights and has brought not only embarrassment, but emotional, financial and mental distress to the Plaintiff.

115.    The Plaintiff is currently being discriminated against by Bank of America refusing to cash the Plaintiff's cashier check and is entitled to injunctive relief against the Defendant (see exhibit F). The Plaintiff has suffered severe injuries and is entitled to recover damages pursuant to 42 U.S.C. §1985(3) and 28 U.S.C §1343 as a direct and proximate result of Defendant's **6-36, 42-46, 48-49 & 55-56** actions in depriving the Plaintiff of rights secured to him by the Fourth,

Fifth, Eighth, Thirteenth, and Fourteenth Amendments.  There is no price tag for a human's life and good name.

## 4th Cause of Action

**Violation of the 5th Amendment, 42 U.S.C § 1985(3), 18 U.S.C.  § 241, §1341 & § 1344 by Defendants Bank of New York Mellon, NFL Player Second Career Savings Plan Master Trust, Savings Board of The NFL Player Second Career Savings Plan, NFL Player Insurance Trust, The NFL Management Council, Meyli Markward, Tammy Thompson, Vicki Denslow, Marie White, Lindsay DiTusa, Cindy D. Sackrin, Drew Rosenhaus, Magistrate Judge Bernard Shapiro and Mark Sawicki.**

116.    On May 18, 2017, Magistrate Judge, Bernard Shapiro, conspires with Mark Sawicki and Cindy D. Sackrin by proceeding to execute a fraudulent Qualified Domestic Relations Order (QDRO) without adhering to federal guidelines and Florida Law. Pursuant to *29 U.S.C § 1056(B)(ii)(I)(II)*, a state Domestic Relations Order (Administrative Child Support Order and establishment of Paternity) **must** be executed pursuant to Florida Law before a QDRO can be deemed valid. None of the required legal procedures were executed, yet the conspirators proceeded to present this order to the NFL Player Second Career Savings Plan with the intent of defrauding the Plaintiff out of $99,000.00 from his 401k retirement plan to pay Cindy Sackrin's attorney fees and illegal child support for her client Ericka Medina. The NFL Player Second Career Savings Plan proceeds to participate in the fraud and to deprive the Plaintiff of his rights. **(See Exhibit A)**

117.    On June 15, 2017, August 8, 2017 and an unknown date Defendant Mark Sawicki conspires by proceeding to mail fraudulent postage including family court pleadings and a fraudulent QDRO with the intent to defraud the Plaintiff. The Defendant is a board certified

attorney and is well-learned in Florida law. The Defendant must be prosecuted accordingly. (See Exhibit C)

118.    The NFL Player Second Career Savings Plan and the NFL Insurance Plan are governed by the Employment Retirement Income Security Act 1974 (ERISA), and it is the responsibility of the plan administrators to protect and adhere to the constitutional rights that are secured to the participants under ERISA. Employees from both plan administrators have willfully and strategically conspired with Bank of New York Mellon, Cindy Sackrin, Drew Rosenhaus, Mark Sawciki, and Ericka Medina to deprive the Plaintiff of his constitutional rights under the Plans, both telephonically and via email. This can easily be proven with phone authenticating technology by a certified professional in the industry and cell phone records.

119.    Between June 7, 2017 and January 20, 2018, The NFL Second Career Savings Plan commits postage fraud by mailing six "Confirmation of QDRO Asset Transfer" letters to the Plaintiff reflecting that the Plan Administrator had disbursed $15,000.00 to the alternate payee listed in the fraudulent QDRO without adhering to the required federal procedures that governs QDRO disbursements. The Defendant clearly shows the willful intent to defraud the Plaintiff while depriving him of his rights secured by the constitution. (**See Exhibit A**)

120.    Between June 7, 2017 to present, Meyli Markward, Tammy Thompson, and Lindsay DiTusa, committed the acts of fraud and conspired with Cindy Sackrin and Drew Rosenhaus telephonically and via email. During this timeframe, the Defendants sent countless email correspondence to the Plaintiff, attaching fraudulent QDRO's and stating that monies from his 401k had been disbursed.  Tammy Thompson emailed the Plaintiff a **manipulated** 401k statement showing that $99,950.00 had been transferred from the Plaintiff's 401k account. The Defendants have full knowledge of the federal law that governs QDRO's but willfully chose to commit fraud and deprive the Plaintiff of his rights. (**See Exhibit A**)

121.    Between August 2015 and October 2017, the Plaintiff called the NFL Insurance Plan several times to remove a dependent who is no longer eligible under the Plan. The Plan Administrator denies the Plaintiff of his right stating that the Plan will not remove the dependent and that the Plaintiff needed to submit court documentation showing that the dependent is no longer eligible. It's to be noted that under the NFL Insurance Plan, a participant has the **right** to submit information proving the dependent to be ineligible. Nowhere in the plan does it require a participant to submit court documentation. (see exhibit A)

122.    On December 27, 2017, the Plaintiff emailed the NFL Insurance Plan requesting to remove a dependent. This request complies with the detailed procedure in the Summary Plan Description.

123.    On December 28, 2017, Pam Hazelgrove, Manager for the NFL Customer Service Center, emailed the Plaintiff stating that the Plaintiff's request has been submitted to the NFL Plan Counsel. This is not a procedure under the Summary Plan Description, which clearly shows the willful discrimination against the Plaintiff and the intentional deprivation of his rights.

124.    On January 3, 2018, Vicki Denslow of the NFL Insurance Plan, emailed the Plaintiff an attachment stating that the Plaintiff misrepresented that the dependent was his child and that the Plaintiff would be liable for $26,184.49, if he wanted to proceed with removing the dependent. This is clear deprivation of the Plaintiff's right to remove a dependent and shows willful disregard of the laws that govern the Plan. (See Exhibit A)

125.    On January 23, 2018, Marie White of the NFL Insurance Plan disregards the law and the Plaintiff's rights by reiterating the last correspondence from Vicki Denslow in an attempt to force the Plaintiff to admit to a false accusation. The NFL Insurance Plan is still currently discriminating and conspiring against the Plaintiff and has not removed the ineligible dependent. (See Exhibit A)

126.    On January 25, 2018, the NFL Player Second Career Savings Plan commits postage fraud by mailing a **manipulated** 401k statement balance showing $15,000.00 being transferred out of the Plaintiffs 401k account. This is a clear criminal act of fraud to deprive the Plaintiff of his constitutional rights as a plan participant. (**See Exhibit A**)

127.    On January 24, 2018, John Doe 2, on behalf of Bank of New York Mellon, commits postage fraud by mailing **three** 1099R forms showing $15,000.00 each in taxable distribution. This act by the Defendant is clear fraud for the sole purpose of deception and to deprive the Plaintiff of his rights. Bank of New York Mellon has full knowledge of the federal requirements for early distribution of 401k pensions regarding QDRO's but chooses to willfully conspire with the NFL Player Second Career Savings Plan to defraud the Plaintiff and disregard his rights. The Defendant is fully aware of a QDRO not being executed in regards to the Plaintiff, pursuant to federal law. (**See Exhibit A**)

128.    The **premediated** 401k pension fund and insurance Ponzi scheme by the Defendants, shows intentional efforts to conspire to deprive the Plaintiff of his rights to his 401k Pension and to move on from an **illegitimate** child. Defendants **24,26,32,37-41,47 & 50-54** have caused emotional distress, mental, and financial distress and have restricted the Plaintiff from his liberty as a person, which is a direct and proximate result of their actions and the Plaintiff is entitled to injunctive relief and to recover damages pursuant to 42 U.S.C §1985(3) and 28 U.S.C §1343.

## Fifth Cause of Action

### Violation of 42 U.S.C § 1985(3), 28 U.S.C. § 241 & the FOURTH and FIFTH Amendments by Defendant, the Miami-Dade Police Department

129.    Officers and employees of the Miami-Dade Police Department have exhibited a **pattern** of official misconduct by violating the Florida law and civil liberties of the Plaintiff, engaging in unlawful arrests, and submitting falsified warrant information on **three** different occasions to the *Florida Department of Law Enforcement* database (FDLE).

130.    On **May 5, 2016,** an employee of the Miami Dade Police Department submitted falsified information to the FDLE regarding a bench warrant designating the crime as an assault with the addition of a $100,000.00 bond without the legal chain of documentation (certified warrant) on **invalid Case** B-15-34548.

131.    On **February, 13, 2017**, two Hispanic Miami Dade Police Officers **dressed in street clothes**, arrived at the Miami International Airport while the Plaintiff was being illegally detained by two U.S Customs Border Patrol Officers after arriving from Nassau Bahamas on American Airlines. The absence of probable cause and the failure to adhere to *Florida Statute 901.16*, makes this act an unlawful arrest and a clear violation of the Plaintiff's civil liberties (Fourth and Fifth Amendments). The Plaintiff repeatedly requested for the two Officers to give cause as to why he was being arrested. One of the Officers replied and told Mr. Patterson that, "There was a warrant for his arrest due to a **"failure to appear"**, and when the Plaintiff asked to see proof of the warrant, the officer stated that, "The warrant was on the computer".

132.    The two Officers **never** presented the warrant to the Plaintiff, and proceeded to arrest and transport the Plaintiff to the *Turner Guilford Knight Correctional Facility (TGK),* without the legal chain of documentation pursuant to Florida law. Before the two Officers illegally committed the Plaintiff to TGK, one of the Officers told the other Officer to "Check in with the boss". The other Officer proceeded to place a call and made the statement "We got him", then ended the call.

133.    The law that governs a "**failure to appear** in court" is *Florida statute 903.26*. There **must** be a certified warrant or capias signed by a judge and processed by the Clerk of Court and submitted to the Sheriff's Department in Miami-Dade County. This required legal procedure was **never executed.**

134.    On August 15, 2017, at the Lawson E. Thomas Courthouse, the Plaintiff was arrested and brought down to a room on the first floor by Miami-Dade Police Officers. While still in hand cuffs, a Hispanic Police Officer tries to take a picture of the Plaintiff with his cellphone. When the Plaintiff refuses to look into the Officer's camera phone, the Officer holding the cell phone grabs the Plaintiff around the neck, choking him, then pushes the Plaintiff's head back against the wall. When the Officer could not take a picture of the Plaintiff, he calls over another Officer and says, "Hold him still while a take a picture of this black motherfucker". The Hispanic Officer proceeds to take a picture with his camera phone.

135.    On **October 16, 2017** and **November 1, 2017**, employees of the Miami-Dade Police Department submitted falsified warrant information (Bench & AC) to the FDLE on two separate **discharged cases** without the legal chain of documentation, and failed to adhere to the required legal procedure pursuant to Florida Law. The avoidance of the Case Dispositions and legal process, is a clear violation of the Plaintiff's Fourth and Fifth Amendment, and an intentional act to detrimentally affect the health and safety of the Plaintiff, in addition to being a willful offense by a public Officer to break the law by concealing an issue in a discharged case (*Florida statute 839.13*). The clear issues being concealed here are the two discharged cases and not having a certified warrant or capias submitted by the Clerk, which is illegal to have on a discharged case.

136.    On January 8, 2017, an official complaint was mailed to the Miami-Dade Police Department's Internal Affairs section regarding the above-mentioned misconduct.

137.    The Plaintiff has suffered injuries by being traumatized, physically attacked, embarrassed, and humiliated as a direct result of the actions by the Miami-Dade Police Department, and is entitled injunctive relief and recover damages pursuant to 42 U.S.C. §1985(3) and 28 U.S.C §1343. The unlawful arrests, physical abuse, online attacks against the Plaintiff's reputation in the FDLE, and deprivation of his rights are a direct result of a **pre-meditated pattern** of malicious behavior committed by the Miami-Dade Police Department (MDPD).  The Defendant's actions clearly show the willful intent to deprive the Plaintiff of his rights secured by the Fourth and Fifth Amendments of the United States Constitution. The Plaintiff is entitled to recover damages for the injuries suffered from traumatization, physical abuse, public humiliation, emotional, and financial distress.  It is impossible to measure the long term negative effect this will have on the Plaintiff because of the actions of the Miami-Dade Police Department.

## Sixth Cause of Action

**Violation of 42 U.S.C § 1985(3) & the FIFTH, THIRTEENTH and FOURTEENTH Amendments by Defendant, the Miami-Dade Corrections Rehabilitation Department**

138.    On February 8, 2016, Turner Guilford Knight Correctional Facility (TGK), willfully accepted the Plaintiff without the required legal documentation pursuant to Florida Statute 944.17(5), and detained the Plaintiff until he paid an illegal purge amount of $5,000.00.

139.    On February 13, 2017, TGK willfully accepts and detains the plaintiff in regards to a fraudulent bench warrant in the amount of One Hundred Thousand dollars ($100,000.00) without a certified warrant or capias, and proceeds to execute the bail bond procedures without adhering to Florida Statutes 903.26 & 944.17(5). The Plaintiff bonded out February 14, 2017.

140.    On August 16, 2017, TGK illegally detains the Plaintiff in solitary confinement for **24 hours** every day for **seven days**, without the required uniform commitment and judgment and sentence forms after the Plaintiff's bond was posted. When the Plaintiff asked the Correctional Officer why he wasn't being released, the Officer stated, "You had a warrant for your arrest and there's a hold on your release, and you have to see Judge Altfield for your Contempt hearing before you're released". Pursuant to Florida statute 944.17(5), TGK should have released the Plaintiff after his bond was posted on August 16, 2017, instead of being released on August 22, 2017.

141.    The Plaintiff was severely traumatized by the intentional cruel punishment inflicted on him by TGK, which led to financial and emotional distress. Due process of law was completely disregarded. Being subject to dehumanizing treatment, and held captive against his will on **three** different occasions, including being subject to slavery for seven days, shows the willful intent to deprive the Plaintiff of the constitutional rights secured to him by the Fifth, Thirteenth and Fourteenth Amendments, which gives the Plaintiff the right to recover damages pursuant to 28 U.S.C. 1343 and 42 U.S.C 1985(3) as a result of these life threatening injuries.

**Relief**

**WHEREFORE**, the Plaintiff, Dimitri Patterson, respectfully demands that this court:

a)  Enter a judgement in his favor and award one billion dollars ($1,000,000,000.00) in damages pursuant to 42 U.S.C. § 1985(3) and 28 U.S.C. § 1343.

b) Institute prosecutions against all individuals named in this Complaint pursuant to 18 U.S.C § 241, 1341 and 1344, and for all crimes committed by the Defendants in this complaint applicable to federal and state law as alternative relief.

c) Grant injunctive relief against the Miami-Dade Police Department by ordering the Department to remove the fraudulent warrant/wanted information from the Florida Department of Law Enforcement Database, with the language stating that no future unmerited information is to be illegally entered into the Florida Department of Law Enforcement database in the name of Dimitri Jonthiel Patterson, born 06-18-1983, for eternity.

d) Grant injunctive relief against The NFL Second Career Savings Plan and the NFL Players Insurance Trust ordering them to remove the **illegitimate** child from the plan for eternity.

e) Grant injunctive relief against Bertila Soto and the Miami-Dade County Clerk of Courts 11th Judicial Circuit ordering the removal of all fraudulent docket entries under the name of Dimitri Jonthiel Patterson for all eternity and to mail the discharge of bond for case numbers **F-15-15779** and **F-17-16392** to **3701 Wilshire Blvd., #530, Los Angeles, CA 90010 within 14 days from the date of the order**.

Dimitri Patterson
3701 Wilshire Blvd #530
Los Angeles, CA 90010
The1king83@gmail.com email
213-739-2800 fax
407-420-7734 phone